ORIGINAL FILED

AUG 1 1 2008

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

E-FILING

ADR

1   DAVID L. BACON (CA Bar No. 42692)
    THELEN REID BROWN RAYSMAN & STEINER LLP
2   333 South Hope Street, 29th Floor
    Los Angeles, CA  90071-3048
3   Telephone:    213.576.8000
    Facsimile:    213.576.8080
4   E-mail:       dlbacon@thelen.com

5   MICHAEL C. HALLERUD (CA Bar No. 68971)
    ELLEN M. PAPADAKIS (CA Bar No. 186621)
6   THELEN REID BROWN RAYSMAN & STEINER LLP
    101 Second Street, Suite 1800
7   San Francisco, CA  94105-3606
    Telephone:    415.371.1200
8   Facsimile:    415.371.1211
    E-mail:       hallerud@thelen.com
9   E-mail:       empapadakis@thelen.com

10  Attorneys for Plaintiff
    CON-WAY INC.

11

12

13            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                   SAN JOSE DIVISION                        RMW

15

16  CON-WAY INC.,                    C 08   03812   HRL

17                Plaintiff,

18       vs.                                    COMPLAINT

19  CENTRAL STATES, SOUTHEAST AND
    SOUTHWEST AREAS PENSION FUND,
20
                  Defendant.
21

22

23

24

25

26

27

28

SF #1531305 v9

**INTRODUCTION**

1.　　Plaintiff CON-WAY INC.[1], on its own behalf and on behalf of all other qualifying business entities under "common control" at the material time, within the meaning of 29 U.S.C. § 1301(b), but excluding Consolidated Freightways Corporation of Delaware ("CFCD"), which was spun off in 1996 to create Consolidated Freightways Corporation ("CFC"), brings this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq.* ("MPPAA"), to compel arbitration of controversies arising under MPPAA and the Central States, Southeast and Southwest Areas Pension Plan ("Plan") or, in the alternative, for a declaration of Con-way's rights under MPPAA.

2.　　Defendant CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND ("Central States"), a multiemployer pension plan under MPPAA, is threatening to impose liability upon Con-way for substantial sums representing CFC's withdrawal liability. Central States' efforts to impose such withdrawal liability upon Con-way are based on Central States' violation of MPPAA and the Plan.

3.　　In 1996 Con-way Inc. (then known as Consolidated Freightways, Inc.) spun off its then wholly owned subsidiary, Consolidated Freightways Corporation of Delaware, which was then renamed Consolidated Freightways Corporation. CFC was then and at all times thereafter a wholly separate corporation and employer. The spin-off transaction occurred in Santa Clara County, California. Central States seeks to impose liability upon Con-way for CFC's withdrawal liability to Central States by deeming the 1996 spin-off transaction a nullity and reconstituting the Con-way "controlled group" as it existed immediately before the spin-off of CFC. This is permitted under MPPAA and the Plan only if Central States has first made a determination that a "principal purpose" of Con-way's 1996 spin-off of CFC was "to evade or avoid" CFC's

---

[1] Con-way Inc. was formerly known as Consolidated Freightways, Inc., CNF Transportation Inc., and CNF Inc. Con-way Inc. and all qualifying business entities under "common control" within the meaning of 29 U.S.C. § 1301(b) are referred to herein as "Con-way."

1  withdrawal liability, and, second, has given Con-way opportunities to seek internal Central States

2  review and to arbitrate Central States' determination of withdrawal liability.

3      4.     No "evade or avoid" determination has been made and/or communicated to Con-

4  way by Central States, and no demand for payment by Central States has been received by Con-

5  way. Nevertheless, Central States proposed to Con-way on July 25, 2008, that Con-way meet with

6  Central States to "structure toward a resolution" of alleged withdrawal liability against Con-way.

7  **PARTIES**

8      5.     Con-way Inc. is a corporation with its principal place of business in San Mateo,

9  California.

10      6.     Central States is a multiemployer pension plan under 29 U.S.C. § 1002(37)(A).

11  Central States' principal place of business is Rosemont, Illinois.

12  **JURISDICTION**

13      7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this

14  action arises under 29 U.S.C. §§ 1401 and 1451(a)(1), (c).

15      8.     This Court has personal jurisdiction over Central States because Central States

16  regularly conducts business in the State of California.

17  **VENUE**

18      9.     Venue is proper in this District pursuant to 29 U.S.C. §§ 1391(b)(1)-(2) and

19  1451(d) because Central States conducts business in this District and because a substantial part of

20  the events underlying this action occurred in this District. Venue is also proper in this District

21  because MPPAA, 29 U.S.C. § 1401(b)(3), provides that arbitration proceedings shall be conducted

22  in the same manner and carried out with the same powers as under the Federal Arbitration Act.

23  **INTRADISTRICT ASSIGNMENT**

24      10.     Intradistrict venue is appropriate in the San Jose Division of this Court pursuant to

25  Civil Local Rule 3-2(c)-(d), because a substantial part of the events underlying this action

26  occurred in Santa Clara County, California.

27

28

**FACTUAL ALLEGATIONS**

11.    Con-way Inc. is a holding company of transportation and logistics companies. Con-way Inc. and its affiliates collectively employ approximately 27,000 personnel across approximately 500 operating locations in 17 countries. Neither Con-way Inc. nor any of its affiliates are currently parties to collective bargaining or other agreements requiring pension contributions to Central States.

12.    Con-way was organized in 1929 as Consolidated Truck Lines and consisted at the time of its formation of what would eventually grow into CFCD and be spun off in 1996 as CFC. The company was renamed Consolidated Freightways, Inc. in 1939. By the time of the 1996 spin-off, CFCD was one of the largest long-haul, "less-than-truckload" ("LTL") carriers in the United States. CFCD before the 1996 spin-off was party to collective bargaining agreements which required its contributions to Central States.

13.    CFC continued, from the date of its formation in 1996 in the spin-off transaction and until it ceased operations and declared bankruptcy in 2002, to be one of the largest long-haul, LTL carriers in the United States and party to collective bargaining agreements requiring its contributions to Central States.

14.    At the time of the spin-off, Ron Carey, then General President of the International Brotherhood of Teamsters, the union representing many CFCD/CFC employees, supported the transaction, stating that it "prevents the drain of resources from [CFCD's] unionized operations to subsidize the expansion of non-union subsidiaries." Stock analysts noted that CFC as an independent company would be more focused and would experience increased, positive cash flow.

15.    CFCD was spun off for *bona fide* business reasons. Therefore, a "principal purpose" of the 1996 spin-off transaction was not "to evade or avoid" withdrawal liability, as required by 29 U.S.C. §§ 1392(c), 1401(f) for the imposition of withdrawal liability on Con-way.

16.    CFC at its formation following the 1996 spin-off had no significant long-term debt; had a full complement of employees, rolling stock, and leased and owned real estate; and had an established brand and customer network. CFC also had substantial credit facilities to provide operating funds. And, CFC retained its pre-spin-off, experienced management team.

17.    CFC was profitable on an annual basis in each year from 1997 through 1999, with an upward trend in earnings in 1997 and 1998. CFC had positive quarter-end balances of cash and cash equivalents for each quarter in 1997-99. CFC's share price was higher from 1997 through 1999 than its share price at the 1996 spin-off.

18.    Admitted errors in business judgment by CFC management beginning in 1999, structural changes in the transportation industry, poor economic conditions, and the terrorist attacks of September 11, 2001, all contributed to the decision of CFC and various CFC corporate affiliates to file for protection under Chapter 11 of the Bankruptcy Code on September 3, 2002. *In re Consolidated Freightways Corp. of Delaware, et al.*, No. RS 02-24284 MG (Bankr., C.D. Cal.). On information and belief, CFC permanently ceased operations involving Plan participants and withdrew from Central States no later than February 2003.

19.    Central States filed proofs of claim in the CFC bankruptcy proceedings on January 30 and February 7, 2003, against CFC and consolidated debtors, totaling $319,059,063.38, for "complete" withdrawal liability, as "complete" withdrawal liability is defined and delimited by 29 U.S.C. § 1383. Central States did not file a claim against CFC and consolidated debtors in the CFC bankruptcy proceedings for "partial" withdrawal liability, as "partial" withdrawal liability is defined and delimited by 29 U.S.C. § 1385. Central States did not file any claim in the CFC bankruptcy proceedings for complete or partial withdrawal liability against Con-way.

20.    Neither Con-way Inc. nor any Con-way Inc. affiliate was, as of September 3, 2002, an "employer," as defined in 29 U.S.C. § 1002(5), with respect to any person on whose behalf CFC was required to make contributions to Central States.

21.    Neither Con-way Inc. nor any Con-way Inc. affiliate was, as of and after the 1996 spin-off of CFC, an "employer," as defined in 29 U.S.C. § 1002(5), with respect to any person on whose behalf CFC was required to make contributions to Central States.

22.    As of September 3, 2002, and continuously thereafter until at least December 2004, Menlo Worldwide Forwarding, Inc. was a party to one or more collective bargaining agreements requiring contributions to Central States.    Menlo Worldwide Forwarding, Inc. was as of September 3, 2002, and to December 2004 a wholly owned subsidiary ultimately of Con-way Inc.

1    23.    Central States did not, in 1996, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E

2    of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was

3    formed was to evade or avoid withdrawal liability.

4    24.    Central States did not, in 1996, pursuant to MPPAA and/or Appendix E of the Plan,

5    determine that Con-way had complete withdrawal liability with respect to any person on whose

6    behalf CFC was required to make contributions to Central States following the spin-off in 1996.

7    25.    Central States did not, in 1996, pursuant to MPPAA and/or Appendix E of the Plan,

8    determine that Con-way had partial withdrawal liability with respect to any person on whose

9    behalf CFC was required to make contributions to Central States following the spin-off in 1996.

10    26.    Central States did not, in 1996, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or

11    Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand

12    payment of same, with respect to any person on whose behalf CFC was required to make

13    contributions to Central States following the spin-off in 1996.

14    27.    Central States did not notify Con-way in 1996 that Central States had, in 1996,

15    determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal

16    purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid

17    withdrawal liability.

18    28.    Central States did not, in 1997, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E

19    of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was

20    formed was to evade or avoid withdrawal liability.

21    29.    Central States did not, in 1997, pursuant to MPPAA and/or Appendix E of the Plan,

22    determine that Con-way had complete withdrawal liability with respect to any person on whose

23    behalf CFC was required to make contributions to Central States following the spin-off in 1996.

24    30.    Central States did not, in 1997, pursuant to MPPAA and/or Appendix E of the Plan,

25    determine that Con-way had partial withdrawal liability with respect to any person on whose

26    behalf CFC was required to make contributions to Central States following the spin-off in 1996.

27    31.    Central States did not, in 1997, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or

28    Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand

1    payment of same, with respect to any person on whose behalf CFC was required to make

2    contributions to Central States following the spin-off in 1996.

3        32.    Central States did not notify Con-way in 1997 that Central States had, in 1997 or

4    earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal

5    purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid

6    withdrawal liability.

7        33.    Central States did not, in 1998, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E

8    of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was

9    formed was to evade or avoid withdrawal liability.

10       34.    Central States did not, in 1998, pursuant to MPPAA and/or Appendix E of the Plan,

11   determine that Con-way had complete withdrawal liability with respect to any person on whose

12   behalf CFC was required to make contributions to Central States following the spin-off in 1996.

13       35.    Central States did not, in 1998, pursuant to MPPAA and/or Appendix E of the Plan,

14   determine that Con-way had partial withdrawal liability with respect to any person on whose

15   behalf CFC was required to make contributions to Central States following the spin-off in 1996.

16       36.    Central States did not, in 1998, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or

17   Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand

18   payment of same, with respect to any person on whose behalf CFC was required to make

19   contributions to Central States following the spin-off in 1996.

20       37.    Central States did not notify Con-way in 1998 that Central States had, in 1998 or

21   earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal

22   purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid

23   withdrawal liability.

24       38.    Central States did not, in 1999, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E

25   of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was

26   formed was to evade or avoid withdrawal liability.

27

28

39.    Central States did not, in 1999, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

40.    Central States did not, in 1999, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

41.    Central States did not, in 1999, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

42.    Central States did not notify Con-way in 1999 that Central States had, in 1999 or earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

43.    Central States did not, in 2000, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

44.    Central States did not, in 2000, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

45.    Central States did not, in 2000, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

46.    Central States did not, in 2000, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

47.    Central States did not notify Con-way in 2000 that Central States had, in 2000 or earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

48.    Central States did not, in 2001, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

49.    Central States did not, in 2001, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

50.    Central States did not, in 2001, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

51.    Central States did not, in 2001, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

52.    Central States did not notify Con-way in 2001 that Central States had, in 2001 or earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

53.    Central States did not, in 2002, pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

54.    Central States did not, in 2002, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

55.    Central States did not, in 2002, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

56.    Central States did not, in 2002, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

57.    Central States did not notify Con-way in 2002 that Central States had, in 2002 or earlier, determined pursuant to 29 U.S.C. § 1392(c) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

58.    On January 30, 2003, Central States stated to Con-way that Central States had not yet made a determination of withdrawal liability against Con-way, and would talk to Con-way first and "not arbitrarily pull the trigger."

59.    In August 2003 Central States advised Con-way that Central States had not yet made an "evade or avoid" determination and, in fact, had not yet even engaged a forensic accountant to conduct the analysis to inform any such determination.

60.    In October 2003 Central States made oral representations to Con-way that Central States had not yet made a determination of withdrawal liability against Con-way.

61.    Central States did not, in 2003, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

62.    Central States did not, in 2003, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

63.    Central States did not, in 2003, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

64. Central States did not, in 2003, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

65. Central States did not notify Con-way in 2003 that Central States had determined in 2003 or earlier, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

66. Central States did not, in 2004, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

67. Central States did not, in 2004, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

68. Central States did not, in 2004, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

69. Central States did not, in 2004, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

70. Central States did not notify Con-way in 2004 that Central States had, in 2004 or earlier, determined pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

71. In May 2004 Central States advised Con-way that no determination of withdrawal liability against Con-way had been made, but that a forensic accountant had been engaged to conduct the analysis to inform any such determination.

72.    Central States did not, in 2005, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

73.    Central States did not, in 2005, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

74.    Central States did not, in 2005, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

75.    Central States did not, in 2005, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

76.    Central States did not notify Con-way in 2005 that Central States had, in 2005 or earlier, determined pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

77.    Central States did not, in 2006, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

78.    Central States did not, in 2006, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

79.    Central States did not, in 2006, pursuant to MPPAA and/or Appendix E of the Plan, determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

80.    Central States did not, in 2006, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand

1  payment of same, with respect to any person on whose behalf CFC was required to make

2  contributions to Central States following the spin-off in 1996.

3       81.    Central States did not notify Con-way in 2006 that Central States had, in 2006 or

4  earlier, determined pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan

5  that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade

6  or avoid withdrawal liability.

7       82.    Central States did not, in 2007, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f)

8  and/or Appendix E of the Plan, determine that a principal purpose of the 1996 spin-off transaction

9  by which CFC was formed was to evade or avoid withdrawal liability.

10       83.    Central States did not, in 2007, pursuant to MPPAA and/or Appendix E of the Plan,

11  determine that Con-way had complete withdrawal liability with respect to any person on whose

12  behalf CFC was required to make contributions to Central States following the spin-off in 1996.

13       84.    Central States did not, in 2007, pursuant to MPPAA and/or Appendix E of the Plan,

14  determine that Con-way had partial withdrawal liability with respect to any person on whose

15  behalf CFC was required to make contributions to Central States following the spin-off in 1996.

16       85.    Central States did not, in 2007, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or

17  Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand

18  payment of same, with respect to any person on whose behalf CFC was required to make

19  contributions to Central States following the spin-off in 1996.

20       86.    Central States did not notify Con-way in 2007 that Central States had, in 2007 or

21  earlier, determined pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan

22  that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade

23  or avoid withdrawal liability.

24       87.    Central States did not, in 2008 as of the date this action was commenced, pursuant

25  to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan, officially determine that a

26  principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or

27  avoid withdrawal liability.

28

88.     Central States did not, in 2008 as of the date this action was commenced, pursuant to MPPAA and/or Appendix E of the Plan, officially determine that Con-way had complete withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

89.     Central States did not, in 2008 as of the date this action was commenced, pursuant to MPPAA and/or Appendix E of the Plan, officially determine that Con-way had partial withdrawal liability with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

90.     Central States did not, in 2008 as of the date this action was commenced, pursuant to 29 U.S.C. §§ 1382 and 1399(b) and/or Appendix E of the Plan, notify Con-way of the amount of any withdrawal liability and demand payment of same, with respect to any person on whose behalf CFC was required to make contributions to Central States following the spin-off in 1996.

91.     Central States did not notify Con-way in 2008 as of the date this action was commenced that Central States had, in 2008 or earlier, officially determined pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and/or Appendix E of the Plan that a principal purpose of the 1996 spin-off transaction by which CFC was formed was to evade or avoid withdrawal liability.

92.     On September 4, 2002, and April 26, 2004, Central States requested of Con-way documentation to determine if a principal purpose of the 1996 spin-off of CFC was to evade or avoid withdrawal liability.  Central States modified its April 26, 2004, request on May 12, 2004.  Con-way complied fully with the Central States' requests for documentation, completing its compliance in August 2004.   Central States made no further requests of Con-way for documentation.

93.     On July 25, 2008, Central States advised Con-way that the Central States Board of Trustees had not yet been asked to make a determination of withdrawal liability against Con-way.  Simultaneously, however, Central States also proposed to Con-way a meeting with Con-way to "structure toward a resolution" of alleged withdrawal liability against Con-way.   Con-way understood Central States' July 25, 2008, advice as a threat that Central States would soon make an official determination of withdrawal liability.

**FIRST CLAIM FOR RELIEF**

94.     Con-way incorporates by reference its allegations in paragraphs 1-93.

95.     On August 11, 2008, Con-way filed a written notice (attached hereto as Exhibit A) with the American Arbitration Association, and served same upon Central States, all as specified by Appendix E of the Plan, of its demand that Central States, if it has made a determination of withdrawal liability against Con-way, be required to arbitrate, pursuant to 29 U.S.C. § 1401, the arbitrable controversies between Central States and Con-way.

96.     Con-way seeks an order, pursuant to 29 U.S.C. § 1401, compelling Central States to arbitrate such controversies.

**SECOND CLAIM FOR RELIEF**

97.     Con-way incorporates by reference its allegations in paragraphs 1-93.

98.     As a result of Central States' statements to Con-way set forth in paragraph 93 above, Con-way has a reasonable apprehension that Central States, in violation of MPPAA and in breach of the Plan, has recently determined, officially or unofficially, that Con-way has withdrawal liability to Central States.

99.     As a result of Central States' statements to Con-way set forth in paragraph 93 above, Con-way has a reasonable apprehension that Central States may commence a civil action against Con-way to collect alleged withdrawal liability without first providing legally sufficient notice of the determination of withdrawal liability and affording Con-way its rights under MPPAA and the Plan to seek internal Central States review of and arbitrate such determination. Any such civil action by Central States would violate MPPAA, breach the Plan, irreparably injure Con-way as a publicly held corporation, and leave Con-way without an adequate remedy at law.

100.    Con-way seeks an injunction prohibiting Central States from commencing any civil action to collect any alleged withdrawal liability determined without full compliance with MPPAA and the Plan, including giving Con-way legally sufficient notice of any determination of withdrawal liability and affording Con-way its MPPAA and Plan rights to seek review of such determination by Central States' Board of Trustees and arbitration of any adverse determination.

1                              **THIRD CLAIM FOR RELIEF**

2          101.   Con-way incorporates by reference its allegations in paragraphs 1-93.

3          102.   Con-way has no withdrawal liability to Central States unless it is finally

4    determined, pursuant to MPPAA and the Plan, that a principal purpose of the 1996 transaction by

5    which CFC was spun off was to evade or avoid withdrawal liability to Central States.

6          103.   In the alternative to the First and Fourth Claims for Relief, Con-way seeks a

7    declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that, because Central

8    States has not made and/or notified Con-way of any determination that a principal purpose of its

9    1996 spin-off of CFC was to evade or avoid withdrawal liability, Con-way has no withdrawal

10   liability to Central States.

11                            **FOURTH CLAIM FOR RELIEF**

12         104.   Con-way incorporates by reference its allegations in paragraphs 1-93.

13         105.   In the alternative to the First and Third Claims for Relief, if Central States has

14   made, but has not notified Con-way of, an assessment of withdrawal liability against Con-way,

15   Central States' failures timely to notify Con-way of Central States' determination of withdrawal

16   liability, timely to notify Con-way of the amount of any such alleged liability, timely to provide

17   Con-way with the schedule for alleged liability payments, and timely to demand payment in

18   accordance with the schedule violate 29 U.S.C. § 1399(b).

19         106.   Any Central States' failures alleged in paragraph 105 above have damaged Con-

20   way by wrongfully impeding Con-way's rights under 29 U.S.C. § 1399(b) and Appendix E of the

21   Plan to seek review by the Plan's Withdrawal Liability Review Committee of the Plan's

22   determination of withdrawal liability, of the amount of any such alleged liability, and of the

23   schedule for payment of any such alleged withdrawal liability.

24         107.   Central States' failures alleged in paragraph 105 have damaged Con-way by

25   wrongfully impeding Con-way's rights under 29 U.S.C. § 1401 and Appendix E of the Plan to

26   demand arbitration of the Plan's determination of withdrawal liability, of the amount of any such

27   alleged liability, and of the schedule for payment of any such alleged withdrawal liability.

28

1    108.    In the alternative to the First and Third Claims for Relief, Con-way seeks a

2  declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that, because Central

3  States has not timely notified Con-way of any determination of withdrawal liability, Con-way has

4  no withdrawal liability to Central States.

5                                          **PRAYER FOR RELIEF**

6        WHEREFORE, Con-way prays for relief as follows:

7        1. An order pursuant to the First Claim for Relief compelling Central States to arbitrate the

8  controversies set forth in Con-way's August 11, 2008, written notice to the American Arbitration

9  Association.

10       2. Preliminary and permanent injunctive relief pursuant to the Second Claim for Relief

11 prohibiting Central States from filing and/or prosecuting a civil action against Con-way to collect

12 alleged withdrawal liability determined in violation of MPPAA and in breach of the Plan.

13       3. In the alternative, a declaration pursuant to the Third and Fourth Claims for Relief that

14 Con-way has no withdrawal liability to Central States.

15       4. Any and all other relief to which Con-way may be entitled.

16

17 Dated: August 11, 2008

18                                 THELEN REID BROWN RAYSMAN & STEINER LLP

19

20                                 By  *David L. Bacon*
                                        David L. Bacon
21                                      Attorneys for Plaintiff CON-WAY INC.

22

23

24

25

26

27

28



1  DAVID L. BACON
   THELEN REID BROWN RAYSMAN & STEINER LLP
2  333 South Hope Street, 29th Floor
   Los Angeles, CA 90071-3048
3  Telephone:    213.576.8000
   Facsimile:    213.576.8080
4  E-mail:       dlbacon@thelen.com

5  MICHAEL C. HALLERUD
   ELLEN M. PAPADAKIS
6  THELEN REID BROWN RAYSMAN & STEINER LLP
   101 Second Street, Suite 1800
7  San Francisco, CA 94105-3606
   Telephone.    415.371.1200
8  Facsimile:    415.371.1211
   E-mail:       hallerud@thelen.com
9  E-mail:       empapadakis@thelen.com

10 Attorneys for CON-WAY INC.

11

12

13

14                **AMERICAN ARBITRATION ASSOCIATION**
                  **MULTI-EMPLOYER PENSION PLAN**
                  **WITHDRAWAL LIABILITY ARBITRATION TRIBUNAL**
15

16 CON-WAY INC.

17      vs.

18                                          **DEMAND FOR ARBITRATION**
   CENTRAL STATES, SOUTHEAST AND
19 SOUTHWEST PENSION PLAN

20

21

22                         **INTRODUCTION**

23      1.      Plaintiff CON-WAY INC.[1], on its own behalf and on behalf of all other qualifying

24 business entities under "common control" at the material time, within the meaning of 29 U.S.C. §

25 1301(b), but excluding Consolidated Freightways Corporation of Delaware ("CFCD"), which was

26 _____

27 [1] Con-way Inc. was formerly known as Consolidated Freightways, Inc., CNF Transportation Inc.,
   and CNF Inc.  Con-way Inc. and all qualifying business entities under "common control" within
28 the meaning of 29 U.S.C. § 1301(b) are referred to herein as "Con-way."

1   spun off in 1996 to create Consolidated Freightways Corporation ("CFC"), demands arbitration of

2   controversies arising under the Central States, Southeast and Southwest Areas Pension Plan

3   ("Plan") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

4   ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C.

5   § 1381 *et seq.* ("MPPAA").

6         2.      This Demand is presented against the CENTRAL STATES, SOUTHEAST AND

7   SOUTHWEST AREAS PENSION FUND ("Central States"). Central States' representatives are:

8                         Thomas C. Nyhan
                          Executive Director and General Counsel
9
                          James P. Condon
10                        Deputy General Counsel

11                        Central States, Southeast and Southwest Pension Fund
                          9377 W. Higgins Road, 19th Floor
12                        Rosemont, IL 60018-4938
                          Telephone:    847-518-9800
13                        E-mail:       tnyhan@centralstates.org
                                        jcondon@centralstates.org
14

15        3.      The controversies subject to this Demand arise under MPPAA and the Plan.

16        4.      ERISA section 4221, 29 U.S.C. § 1401, provides that "[a]ny dispute between an

17  employer and the plan sponsor of a multiemployer plan concerning [withdrawal liability] shall be

18  resolved through arbitration." Appendix E of the Plan, Section 6(b)(1), provides for arbitration of

19  withdrawal liability disputes under the Multiemployer Pension Plan Arbitration Rules of the

20  American Arbitration Association.

21                                  **STATEMENT OF FACTS**

22        5.      Con-way Inc. is a Delaware corporation headquartered in San Mateo, California.

23  In 1996 Con-way Inc., then known as Consolidated Freightways, Inc., spun off its then wholly

24  owned subsidiary, Consolidated Freightways Corporation of Delaware, to form Consolidated

25  Freightways Corporation ("CFC"). CFC was then and at all times thereafter a wholly separate

26  corporation and employer.

27        6.      CFC was from its spin-off in 1996 one of the largest long-haul, "less-than-

28  truckload" carriers in the United States. CFC was a party to collective bargaining agreements

1  requiring its contributions to Central States.  CFC ceased operations and declared bankruptcy in
2  2002.  CFC permanently ceased operations involving Plan participants and withdrew from Central
3  States no later than February 2003.

4      7.    Central States is a multiemployer pension plan under MPPAA.

5      8.    Central States has by its communications and conduct, continually since CFC filed
6  for bankruptcy in 2002, and as recently as July 25, 2008, assured Con-way that no determination
7  of withdrawal liability against Con-way had been made under MPPAA and the Plan.

8      9.    On July 25, 2008, Central States also proposed to Con-way a meeting to "structure
9  toward a resolution" of alleged withdrawal liability against Con-way.  As a result, Con-way has a
10  reasonable apprehension that Central States, in violation of MPPAA and in breach of the Plan, has
11  recently determined withdrawal liability against Con-way.

12      10.   If Central States contends it has made an assessment of withdrawal liability against
13  Con-way, Central States has not given legally sufficient notice to Con-way of such assessment.
14  Therefore, Central States has violated MPPAA and the Plan by its failures timely to notify Con-
15  way of Central States' determination of withdrawal liability (including, pursuant to 29 U.S.C. §§
16  1392(c) and 1401(f) and Appendix E of the Plan, that a principal purpose of the 1996 spin-off
17  transaction by which CFC was formed was to evade or avoid withdrawal liability), timely to notify
18  Con-way of the amount of any such alleged liability, timely to provide Con-way with the schedule
19  for alleged liability payments, and timely to demand payment in accordance with the schedule.

20      11.   Any such failures by Central States wrongfully impede Con-way's rights under
21  MPPAA and the Plan to seek review by the Plan's Withdrawal Liability Review Committee of the
22  Plan's determination of withdrawal liability (including, pursuant to 29 U.S.C. §§ 1392(c) and
23  1401(f) and Appendix E of the Plan, that a principal purpose of the 1996 spin-off transaction by
24  which CFC was formed was to evade or avoid withdrawal liability), the amount of any such
25  alleged liability, and the schedule for payment of any such alleged withdrawal liability.

26      12.   Any such failures by Central States wrongfully impede Con-way's rights under
27  MPPAA and the Plan to demand arbitration of the Plan's determination of withdrawal liability, the

28

SF #1538497 v4                          -3-
                              Arbitration Demand

1  amount of any such alleged liability, and the schedule for payment of any such alleged withdrawal

2  liability.

### FIRST CONTROVERSY

4      If Central States has made a determination of withdrawal liability against Con-way, Con-

5  way hereby demands arbitration of its present dispute with Central States over the sufficiency of

6  Central States' notice of withdrawal liability (including, pursuant to 29 U.S.C. §§ 1392(c) and

7  1401(f) and Appendix E of the Plan, that a principal purpose of the 1996 spin-off transaction by

8  which CFC was formed was to evade or avoid withdrawal liability), notice of the amount of any

9  such alleged liability, and notice of the schedule for payment of any such alleged withdrawal

10  liability.

### SECOND CONTROVERSY

12      If Central States has made a determination of withdrawal liability against Con-way, Con-

13  way hereby demands arbitration of its present dispute with Central States over the existence of

14  such withdrawal liability (including, pursuant to 29 U.S.C. §§ 1392(c) and 1401(f) and Appendix

15  E of the Plan, that a principal purpose of the 1996 spin-off transaction by which CFC was formed

16  was to evade or avoid withdrawal liability), the amount of any such alleged liability, and the

17  schedule for payment of any such alleged withdrawal liability.

### REQUEST FOR AWARD

19      Con-way respectfully requests, pursuant to Section 38 of the Multiemployer Pension Plan

20  Arbitration Rules, all remedies and relief within the scope of ERISA and the Plan which are in

21  order based on the record, including all arbitration fees and costs and attorneys fees.

22  Dated: August 11, 2008

THELEN REID BROWN RAYSMAN & STEINER LLP

By  *David L. Bacon*
                David L. Bacon
                Attorneys for CON-WAY INC.